Morning, Your Honors. May it please the Court. Sorry, Jay Handlin on behalf of the appellants. The core question of this case as it has been refined most recently by the Court's request for supplemental briefing comes down to this. Does the IDEA require that an IEP identify the school at which an educational agency proposes to provide special education services? The Hawaii DOE says, second page of their answering brief, quote, there's nothing in the IDEA or its regulations requiring school districts to prepare school-specific IEPs that identify the specific school or location where the IEP will be implemented, and parents have also failed to cite any case law interpreting such a requirement under the IDEA. With all due respect to the Hawaii DOE, that appears to be wrong and wrong again. The IDEA has an explicit location requirement that is found in 20 U.S.C. 1414 D1A17, and numerous Court decisions, including the Ninth Circuit's 2011 decision in K.D. v. the Department of Education, State of Hawaii, as well as the Fourth Circuit's 2007 decision in A.K. against Alexandria City School Board say exactly the opposite of what the DOE argues in this case and has argued. Well, the question is, what does location mean? Sure. We're aware of all of that. What does it mean? And how do we derive a proper meaning from it? Well, Judge, I will tell you, first, what it has to do, it has to mean something different than placement. Do you think it has some, it should have some connection to its sort of obvious meaning of situs or geographic? For any parent or any person, parent, representative, whatever, who has sat through an IEP meeting whether with the State of Hawaii or anybody else, what location means is very clear because the DOE is in that meeting, and this is the facts are in the record about the IEP meeting at which the May 2012 IEP was developed. The school is in there with people from, the DOE is in there with people from a specific school selling a specific school. They are there saying, you should send your child to Kalani High School. Here are six people from Kalani High School, each of which will speak to the qualifications of Kalani High School to provide the special education services. So everybody understood, in this case, everybody understood that the May IEP was for Kalani High School. Except, Your Honor, once this July 30 letter is sent and received, which we read as saying that the DOE was proposing to take the, what we understood up to that point, to have been a Kalani developed IEP. But you understood that IEP though, the services to be rendered under that IEP were to be provided at Kalani High School. Except. No, just. Yes. No, no, no. Yes. Yes, correct? I mean, the record reflects that that was your understanding as well. That's absolutely right. So, just so I understand, it's your argument there's a procedural per se failure because they didn't specify Kalani as the location in the IEP? Number one, yes. Okay. It's based on the IDEA use of the word, or the regulations use of the word, location. Correct. Okay. And? And, well, based on the use of the word location in the statute, the regs, what this court has said location means. Yes, I understand. Okay. And so, when you moved to a different district, I mean a different school location an hour away, there are two high schools there, right? Three. Public high schools. Yes. Okay. There's three. Okay. And you were asked to provide the address where you were moving to so they could transfer the IEP from Kalani, designed for Kalani, as you say, to the new location, right? Yes. And you didn't provide that information? Correct. Okay. And the nature of the IEP at Kalani provided for various services. What was in that IEP that, in your view, wouldn't transfer to a new location? Your Honor, if I may, I want to back up. The minute that the Hawaii DOE sent a letter saying, tell us your new home address so that we can determine your new homeschool so that we can, so the new homeschool, which will just be based on your address, can implement the Kalani-developed IEP. That right there. No, I'm understanding. I understand that what about the IEP is not transferable. In other words, let's assume, hypothetically, that the IEP says that Rachel will have access, have more time on test-taking built into the program. That's the IEP. That's that simple thing. Okay. No, I understand. I'm trying to simplify. I laugh because Rachel has never had a simple IEP. I understand, counsel. I'm trying to get to the point of your argument. So, can I finish? I understand you're emotional about this, but I want to get the construct. Okay. So, you move to a different high school, and the IEP, the district says, is not location-specific. The services can be provided at any public high school, they believe, and therefore, they'd like to know where the address is. So, I'm trying to find out if the only thing in the IEP were this additional time, would that violate the IDEA because the school district didn't start the process over at the new high school? If that were the sole accommodation in the IEP, probably not. But, again, I... That's why I was asking you what in the IEP in this case did you believe wasn't transferable to the option of the new school. The... During the IEP meeting, there was extensive discussion about the physical layout of Kalani High School and how the school itself was broken down into specific units. Among other things, Rachel, she is... She's very small, she's 4'8", and she has motor issues as well as other things. It takes her longer to get from one place to another. So, the physical size of a campus is an issue. That was something I believe... It was certainly addressed in the meeting. I don't recall specifically if it's in the IEP or not. But, extensively discussed at the IEP meeting, and again, this is in the record, was the concern about the school's experience with full inclusion of differently abled kids, period, Down syndrome in general experience with sending a child with Down syndrome on diploma track. That was all talked about with the Kalani folks, and they said, we can do this. For the DOE simply to say, we can just ignore all that specific discussion. We were selling you on a specific school, but now because we wrote up the IEP in such a way that it doesn't actually say Kalani, we can just take that IEP, plug it into the new school, and not call a new IEP meeting first to see are any of these Kailua schools capable of satisfying the same things that we represented? Why wouldn't a parent... I mean, I understand the feelings that are involved in this area, but why wouldn't it be responsible also on the parent's part to just say, look, we think we need another IEP session to see if this new current school, the services that were identified to be provided at Kalani High School could be provided at the current school. Why would you just assume that they wouldn't make any further accommodations or say, well, you know, we need to do this and this, and maybe this isn't working at these new schools? Why wouldn't you... Respectfully, Your Honor, first... I don't understand. I mean, explain to me. I just don't understand. Under the IDEA, first of all, it's not the parent's job. It is never the parent's job to tell the educational agency, you need to call a new IEP meeting. That is the educational agency's job. And if they're supposed to do it and they don't do it, they don't get to say, oh, the parent should have asked before. Wait a minute. But, you know, parents do move. People do change schools all the time. And so what you're saying is that a parent could just move to a new location and the old IEP is just out the door. If the IEP is school-specific, which it is supposed to be by law... So how is a school ever supposed to... How are they ever supposed to deal with that? I don't quite understand. I'm having a hard time sort of taking your argument and laying it over the statutory scheme or the regulatory scheme. Your Honor, actually, and I apologize if I'm not being clear. No, you're not. I don't understand the confusion because we gave the school notice that we were moving, where we were moving to. But you didn't tell them where you were moving. You didn't tell them the... You just said there were three schools in the new area. They asked for your address. You didn't give it to them. Your Honor, as it's in the record, we hadn't bought a house yet. We were moving someplace temporary. There was no permanent home address to give them until two months into the school year. Well, then how would there be a new IEP? With whom? With whom would they offer to have the new IEP? The Hawaii DOE is broken into different areas, and Windward, the Windward Coast, which covers, among others, Kailua, Kaneohe, that then, we told them we're going to Kailua. We don't know where exactly yet, but that put the IEP responsibility into Windward's obligation. But you're saying, counsel, that the two critical factors were the physical layout of the school and the experience of the faculty and staff with Down syndrome children being mainstream. Okay? So unless they know which of the three high schools that you're going to be closest to, what are they supposed to do? Convene a IEP session with all three high schools? Well... Because you're saying it's, from your standpoint, it was important to know which high school, assume that, you know, assume that it's specified Kalia, Kalani High School. Wouldn't you then say, we want a new, you expect them to say, okay, we have to convene an IEP wherever you're moving. Give us the address so we can know what the presumptive school is. Your Honor, at no time did the DOE ever say, let's have a new IEP meeting. Well, wait a minute. I'm looking at the July letter. And it says, the IEP is not specific to Kalani. Inform us of your new address as soon as possible. So the location where Rachel's IEP can be implemented can be determined. And your new home school can prepare to provide Rachel with a special education and related services identified in her IEP. So they're saying, in our view, you've worked out an IEP specific to Rachel. Now, we'd like to implement it in the new home school. And you won't give them the address. So I don't see them refusing the request or the idea of convening a new IEP just to validate that the Kalani one needed to be modified. Your Honor, if the court can find anywhere in that July letter Well, let me say that what should that letter have said? That we want to convene a new IEP and give us your address? Yes. That's what they should have said? Yes. And because they didn't do that, they violated? No, Your Honor. Because they didn't do that, they said we don't need to do that because we're just going to transplant the Kalani developed IEP because we think we can do that. In fact, Mr. Otani put in a declaration, the principal at Kalani, that said essentially it's Hawaii DOE policy to make non-school specific IEPs precisely so that they can just pick these up and transfer them. And the letter says just whatever your new homeschool is, that's where Rachel's existing IEP is going to be implemented. And that is respectfully, in our view, predetermination. Okay, so ultimately the question you're posing is can they have a generic non-school specific IEP? Even, no matter what the provisions are, the IDEA requires that they be absolutely school specific and the policy of the district to say we can have a non-specific is flat out illegal. Yes, Your Honor. Okay, thank you. But let me ask you one other, let me ask you a follow-up question. There really is no question here that the May IEP was for Kalani High School. Well, actually, Your Honor, when we moved for summary judgment before the Administrative Hearings Officer, the Hawaii DOE defended against that motion by saying no, actually, that's what you just said, that's wrong. They said that wasn't actually, it was developed with input for Kalani, but it was intended to be generic, any public high school. That is what they have defended. I may have been there, but you don't contest the substance of that May IEP. Not until they said, because Your Honor, you're absolutely right what you asked before. We reasonably understood at the time, based on the meeting and based on, you get an IEP document that says it's from Mitchell Otani Principal Kalani High School. You think you've gotten a Kalani IEP. Right, because it does say at the top there, Kalani High School. It is only when Hawaii DOE repudiates that and says, oh, it may look like a Kalani-specific IEP, but it's not. That is what violates the IDEA. It's not so much that they didn't specify in writing in the IEP it was Kalani. It's one way or the other, they can't transfer the Kalani IEP to another school without conducting a new process. I think it's both, Your Honor. Well, I don't know what... Well, if it's both, and your statutory interpretation argument is that the term location in the statute has to specifically name Kalani High School, what happens, hypothetically, to a family that has an IEP with the high school named? They move, and now that IEP got transferred. New services are implemented, but yet the new IEP doesn't name the right school. At what point, then, does it become a procedural violation? As soon as the... Hypothetically, you have a family that is moving. The family notifies the DOE at the earliest possible time of the move. The DOE's job is to say, okay, let us convene a new IEP meeting in, again, these districts within the state. So if you're moving Windward, let's go, let's convene a Windward IEP meeting and sit down and figure out if any of the three Windward high schools can meet the requirements in the existing IEP, and you modify or you write up a new IEP. It's done all the time. And in the interim, then, do the terms of the old IEP get implemented in a new setting? Presumably, for the benefit of the child, right? You wouldn't want that gap in services. So you've got a situation, I mean, looking at it, interpreting the entire statutory scheme in a practical sense. If you move, the idea, as I understand it, is that the IEP is then transferred and the services are immediately implemented. There isn't a gap in services just because a new IEP meeting may not have, you know, had a chance to get set up and take place, right? If it's not practicable to convene a new IEP meeting, so if the move is, for example, right smack in the middle of the school year, correct. If the move is before the start of the school year, it's incumbent upon the school district to convene a new IEP meeting and figure out, and maybe they have the new IEP meeting and they say, you know what? We think Kalaheo can do this. Then they've satisfied their obligations under the IDEA, but for them simply to say, send the new address, that'll determine your new homeschool and that school will implement the existing IEP. Well, that gets back to the line of questioning by Judge Fischer. Without knowing the school, how can the process even begin? So why not just implement what was meant originally for Kalaheo High School until we figure out what the new school is going to be to see if the services can mirror what was contemplated for Kalaheo. Why isn't that a practical, common-sensical way to look at it? Because, again, the way Hawaii sets these things up, Windward, Townside, they are different districts. There are different administrative people involved. So as soon as we said Kailua, they knew that was Windward. And Ms. Reedy, Beverly Reedy, from whom they put in a declaration in opposition to the summary judgment motion before the Administrative Hearings Officer, is a Windward person who is charged with responsibility for this. All Ms. Reedy had to do, or anybody there, was say, let's convene a Windward IEP and we can walk through the abilities, experience, physical layout, and so forth, of the different Kailua high schools and figure out if any of this works. They jumped straight to, we're just going to plug in the old one. Okay, I think we've got your argument. Thank you. Good morning, Your Honors. May it please the Court. My name is Kaliko Nalani-Fernandez. I'm here on behalf of the State of Hawaii. Could you pull the mics? Yes. Is that better? Yes. I'm here on behalf of the State of Hawaii Department of Education. In this case, Your Honor, the appellants have simply failed to prove their central theory that an IEP must be school specific and seek to hold the DOE liable for their own failure to communicate with the DOE or to respond to the DOE's numerous requests for information until five months into the school year. First, Your Honor, I'd like to briefly note that this school specific argument that the appellants raised before this court was not raised at the administrative level in their due process request. Here, they contend, among other things, that the IEP was deficient by which it was to be implemented. But before the administrative hearings officer, they instead contended that the later July 30, 2012 letter from Principal Otani was violative because it allegedly took the position that the IEP could be implemented at any public high school. There's a distinction between those arguments, and they simply did not raise any argument with respect to the May IEP at the administrative level. That's evident in the record that at ER 263, ER 265, they represented to the administrative hearings officer that they were not challenging anything with respect to the May IEP, that their claims related solely to the effect of the July 30 letter. The district court noted that and stated that the May IEP had not been challenged, and that the administrative hearings officer had properly limited the scope of his decision to the effect of the July 30 letter. So for those reasons, Your Honor, we believe this claim was not raised at the administrative level and cannot be raised here. Even if the court were to consider it, however, we believe it should be rejected. First, I want to make clear what this claim really is. The appellants are not contending that they couldn't identify where the IEP was to be implemented. They're not arguing that they were left to fend for themselves to find a school for implementation of the IEP. They're not arguing that they had no offer to them. Let me just clarify your point right there. So is it your view or the department's view that the May IEP was specific to Kalani High School? It's our position that the IEP document itself is not specific to Kalani High School, but it was clear, and the appellants have conceded, that the IEP was to be implemented at Kalani High School. So it was designed for Kalani High School? The IEP was designed based on the child's needs and the child's services. It's not designed... Who was on the IEP team? It included the parents. It included teachers from Kalani. It included the Kalani High School principal. I think the context is important here in that this child had been attending private school pursuant to a settlement agreement, and so naturally when you have an IEP meeting in that type of concept, there's going to be discussion of, well, these are the things about Kalani that we think are important. But it's not as if you look at the IEP document itself, there's nothing in there, and council could not identify anything in there that's specific to Kalani or only Kalani could do. It was a document that could... Any parent who participated in this, I think, would understand that this is to be and the appellants have conceded that they knew and understood that. I think there isn't any obligation, though, or anything that bars an IEP which is developed based on the needs of a child. It contains... So what do you think location means in the statute and the regulation? The location means the type of environment that's appropriate for implementation of services. That's what the Second Circuit concluded in TY, the Fifth Circuit concluded in White, and it's what the U.S. Department of Education, the agency charged with administering the IDEA has concluded. It was specifically asked in public comment, what does location mean? Does it refer to a specific school? And in response the USDA stated location refers to a type of environment giving as examples a resource room or a regular classroom and indicating that location does not equate... What kind of deference is that entitled to, if any? We believe it's entitled to skid more deference, Your Honor. It's a reasonable, persuasive interpretation of the agency charged with administering this statute. The agency has remained consistent on this over time in later pronouncements. The agency again, in 2006, stated that location refers to the physical surrounding, such as the classroom in which a child with a disability receives special education and related services. Can you then address as a practical matter counsel's argument that the July 30 letter assumed or appeared to assume that the Kalani developed IEP was transferable to wherever the home school would be in the Windward District and what should have happened in the letter was we need your address so we can decide which of the schools in the Windward District will be implementing this and his ultimate point is you didn't need the address. What you should have done is having moved from one district to the other Rachel was entitled to the District of Windward convening an IEP as he says, to see which of the three schools could best accommodate Rachel's needs, given the specifics he mentioned, physical layout and the experience of such schools with mainstreaming Down Syndrome children. I think first, Your Honor just to be clear I don't think there's anything in the IDEA and I don't think appellants have pointed to anything in the IDEA that confines an IEP to a specific school and means that an IEP cannot be transferred. In fact, they have some regulation that says transferability, right? Yes, there's a portion of section 1414 that specifically discusses transfer within the same state and makes clear that a local educational agency can adopt a previously held IEP as Judge Wen pointed out. If that were not the case, it would be an impractical system where students would be left with this gap when you move. You need to be able to take that IEP and see if it can be implemented at a new school. That sort of begs the question yes it's transferable as an interim step but does that not also require reconvening or convening an IEP meeting either at the site specific school where they moved or at least within the district where there are three schools apparently to assure that those schools or school can properly transfer the provisions of the existing IEP? Yes your honor first an IEP contains services accommodations, methods of evaluation those don't change because a student's address changes so unless there was some other circumstance there wouldn't be a need to re-evaluate. Well I don't know that I agree with you about services or accommodations don't change if the physical layout of a school is important you know it may you know I can envision circumstances where a school layout or the fact that the staff has not had extensive experience with Down syndrome students would be a factor to consider I mean if Kalani has experience that is three times better than anything that you can get in the Windward district why wouldn't that be relevant to the parent? Certainly it would be relevant to the parent and well first that information if the child's IEP here stated it must be the child must be in this certain type of environment with these certain circumstances I don't believe the IEP here states that but if it did then certainly the DOE would have to find a school that was able to meet or to satisfy those needs and it's not the DOE's position here that it could implement the IEP at any public high school no matter whether it could whether that school was actually capable of doing so if you look to the declaration of Beverly Reedy at ER 150 that makes clear the process the DOE would have undertaken once it received the student's new address and that's the portion that appellants here refused to provide the DOE the DOE is obligated to offer services as near to the child's home as possible and so the new address was essential once it received that information as described by Ms. Reedy it would have said okay this is the nearest school can it implement the IEP and to be clear I think appellant's argument is also based on a misunderstanding of the term homeschool when Principal Otani was referring to homeschool he wasn't saying we're just going to put you at whatever school as close as it doesn't matter the homeschool is the nearest school that is capable of implementing the IEP but would there be an interactive process at that point? Yes as a practical matter it's best practice we believe for an educational agency or a school district when a student moves to have a meeting with the parents to discuss the student to discuss the transition we're simply saying that there isn't anything any reason why it would have to be an IEP meeting with an IEP team to re-evaluate the services, the accommodations etc. what that information has already been established certainly if there was some kind of change then a new IEP meeting could be held but a mere move, a mere change in address wouldn't trigger an obligation or mean it's necessary to re-evaluate an IEP What would be wrong or what would be impracticable about specifying the location of the school in the IEP? First your honor, the IDEA is very clear that an IEP must be based on the needs of a child yet to require an IEP to be school specific or to hold that an IEP can only be implemented at one school and it cannot be transferred I'm not saying not transferred the statutory scheme anticipates transfers but I mean when they develop these IEPs what's wrong with including where it's going to be I think your honor the IEP as I said based on the needs of a child and so to require IEPs to be school specific puts an incentive or incentivizes IEPs or sort of caters them to be based on the capabilities of a particular school rather than the unique needs of a child and school districts must also have the flexibility to determine after an IEP is developed and after it's clear what that child needs where those services can be offered that's sort of the natural logical progression especially in cases where private placement may be necessary and so the department has to have the flexibility to sort of say this is what we need now we need to figure out what private school can offer this plan What role does the parent have in that? The parent is certainly entitled to participate in the IEP process but other cases namely the 5th Circuit case in White make clear that parents do not have a veto power over a specific school they certainly have input into the services, the accommodations the program that the student needs but they don't have a power the determination of school is more of an administrative matter they don't have a veto power to say no we're not going to send our child here and force the DOE to send the child to some other school But you would agree as Judge Fischer was trying to point out that not all schools can meet the needs of a particular child Yes, that's certainly true and the DOE here was ready, willing and able to find a school for implementation of this IEP to ensure that the services in those IEP could be implemented at Kailua High School How is that communicated to the parents here? I've read Ms. Reedy's process statement All we have is a July 30 letter How does the parent know that this process of getting you know the transferred IEP implemented and evaluation and the process Where is that communicated to a parent so that they know that that's the process I think the July 30 letter from Principal Watani itself stated that he needed the new address so that so he could determine where Rachel's IEP can be implemented I think it's clear from that statement he's looking to get more information to try to figure out where the IEP can be implemented he's not saying that we're just going to do whatever we want he's explicitly asking for more information and the appellants here simply prevented that process from playing out by not providing the address until 5 months into the school year Unless the court has any further questions, we respectfully request that you affirm the district court's order Thank you I'll give you a minute for rebuttal If I can do this as fast and efficiently as I can The state says this wasn't raised in the due process petition The petition said, challenged the DOE's pick a school, any school approach as not satisfying the requirements of either an individualized education program or an offer of free appropriate public education that is precisely this issue and in any event, in defending the due process case, they injected this issue into it by saying we can just completely transfer IEPs from one place to another without checking first, they're not school specific so they've agreed to the issue being litigated under 20 U.S.C. 1415 F3B They would propose to define location to mean exactly what the U.S. DOE's regs and this court in the ND case, said the word placement means, and placement and location are different words used differently, they're two different requirements under the IDEA placement and location, location cannot mean the same thing as placement it violates all principles of statutory construction, it would render the word location completely redundant, explained in the supplemental briefing why that page in the Federal Register is not entitled to Skidmore deference Skidmore is by the way a case that does not appear in the state's brief they thought this was Chevron hour deference and finally your honors, I would simply say if the DOE personnel had been cross examined, let's just say hypothetically that this was actually put to an evidentiary hearing and were cross examined and said you know those Hanlons, we think they're a pain in the neck and we just decided that we're going to send Rachel to a public high school no matter what and we didn't care which if they said that well I think even the state would agree that that's unlawful predetermination that issue we never got to that because the hearings officer granted the state summary judgment on a motion it had not made and we never got to questions about what did Mr. Otani mean in this letter, so even if the court thinks that the appellants are wrong on the issues about does the IDEA require a specific school, I think the predetermination issue is not something that can be determined against the appellants as a matter of law, thank you your honors okay, thank you thank you counsel, we appreciate your arguments in this matter, it's submitted for decision
judges: Fisher, Paez, Nguyen